UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO.

DELGARDO TERRY, an individual,
and MARY A. TERRY, an individual,

    Plaintiffs,

v.

OAKBROOKE ESTATES PROPERTY OWNERS
ASSOCIATION, INC., a Florida Not-For-Profit-Corporation,

    Defendant.
_____/

## COMPLAINT

Plaintiff, Delgardo Terry ("Delgardo"), and Plaintiff, Mary A. Terry ("Mary" and together with Delgardo, "Plaintiffs"), hereby sue Defendant, Oakbrooke Estates Property Owners Association, Inc. ("Defendant"), and allege as follows:

## JURISDICTION AND VENUE

1. This is an action for, *inter alia,* compensatory, and punitive, damages relating to post-acquisition housing on the basis of racial discrimination under the Fair Housing Act, 42 U.S.C. §3601 et seq. (the "FHA").

2. This Court has original jurisdiction pursuant to 11 U.S.C. §1331, and 42 U.S.C. §3613, because this lawsuit is being brought under the FHA.

3. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to §28 U.S.C §1367.

1

4. Venue is proper pursuant to §28 U.S.C §1391(b), as the events or omissions giving rise to the causes of action set forth herein occurred in this district, and Defendant is located within this district

## PARTIES

5. Defendant is a Florida Not-for-Profit Corporation homeowners' association that operates, and governs, a community located in Stuart, Florida (the "Community"), pursuant to the Defendant's governing documents, and Chapter 720 of the Florida Statutes.

6. Pursuant to, *inter alia*, Article I Section 17 of the Declaration of Protective Covenants, Conditions, and Restrictions for Oakbrooke Estates at the Gardens (the "Declaration"), Plaintiffs are members of the Association. A copy of the Declaration is attached hereto at Exhibit "A."

7. Delgardo is a natural person, and a citizen, and resident, of the State of Florida.

8. Delgardo is African-American.

9. Delgardo is the only African-American that owns a home in the Community.

10. Mary is a natural person, and a citizen, and resident, of the State of Florida.

11. Mary is Caucasian.

12. Delgardo, and Mary, are husband, and wife.

13. Delgardo, and Mary, are the only bi-racial couple that own a home in the Community.

14. Plaintiffs are aggrieved persons as such is defined in section 3602(i) of the FHA, and have suffered harm as a result of Defendant's conduct.

## FACTS COMMON TO ALL COUNTS

15. This lawsuit is predicated upon Defendant's premeditated, diabolical actions of

coercion, threats, and intimidation in order to ensure that Plaintiffs were deprived of the use and enjoyment of their own home.

16. Unfortunately for Defendant, while it may appear to be 1956 in the fiefdom that is the community they govern, and operate, it is 2022, and the deplorable acts of Defendant are not tolerated under the law.

17. Plaintiffs have owned certain real property located in the Community (the "Property") since in or about October, 2004.

18. Pursuant to Article VI of the Declaration, "any exterior addition to or change in alteration [on the Property cannot] be made until the plans and specifications showing the nature, kind, shape, height, materials, and location of the same shall have been submitted to and approved in writing for harmony of external design and location in relation to surrounding structures and topography by the Architectural Review Board [the "ARB"] as hereinafter defined."

19. Pursuant to Article VI Section 1 of the Declaration, the ARB is appointed by the Board, and required to be comprised of three (3) individuals.

20. Pursuant to section 720.3035(4) of the Florida Statutes:

> Each parcel owner shall be entitled to the rights and privileges set forth in the declaration of covenants or other published guidelines and standards authorized by the declaration of covenants concerning the architectural use of the parcel, and the construction of permitted structures and improvements on the parcel and such rights and privileges shall not be unreasonably infringed upon or impaired by the association or any architectural, construction improvement, or other such similar committee of the association. If the association or any architectural, construction improvement, or other such similar committee of the association should unreasonably, knowingly, and willfully infringe upon or impair the rights and privileges set forth in the declaration of covenants or other published guidelines and standards authorized by the declaration of covenants, the adversely affected parcel owner shall be entitled to recover damages caused by such infringement or impairment, including any costs and reasonable attorney's fees incurred in preserving or restoring the rights and privileges of the parcel owner set forth in the declaration of covenants or other published guidelines and standards authorized by the declaration of covenants.

21. As set forth herein, Defendant has unreasonably infringed upon and impaired Plaintiffs' rights concerning the use of the Property by selectively enforcing rules and regulations against Plaintiffs that are not enforced against Caucasian owners.

22. Pursuant to section 720.3035(5) of the Florida Statutes:

> Neither the association nor any architectural, construction improvement, or other such similar committee of the association shall enforce any policy or restriction that is inconsistent with the rights and privileges of a parcel owner set forth in the declaration of covenants or other published guidelines and standards authorized by the declaration of covenants, whether uniformly applied or not. Neither the association nor any architectural, construction improvement, or other such similar committee of the association may rely upon a policy or restriction that is inconsistent with the declaration of covenants or other published guidelines and standards authorized by the declaration of covenants, whether uniformly applied or not, in defense of any action taken in the name of or on behalf of the association against a parcel owner.

23. As set forth herein, Defendant has enforced policies and restrictions on Plaintiffs that are inconsistent with Plaintiffs' rights and privileges as set forth in the Declaration.

24. Section 720.305 of the Florida Statutes sets forth the requirements for imposing a fine on a member of Defendant, such as Plaintiffs.

25. Section 720.305(2)(b) of the Florida Statutes provides:

> A fine or suspension levied by the board of administration may not be imposed unless the board first provides at least 14 days' notice to the parcel owner and, if applicable, any occupant, licensee, or invitee of the parcel owner, sought to be fined or suspended and an opportunity for a hearing before a committee of at least three members appointed by the board who are not officers, directors, or employees of the association, or the spouse, parent, child, brother, or sister of an officer, director, or employee. If the committee, by majority vote, does not approve a proposed fine or suspension, the proposed fine or suspension may not be imposed. The role of the committee is limited to determining whether to confirm or reject the fine or suspension levied by the board. If the proposed fine or suspension levied by the board is approved by the committee, the fine payment is due 5 days after notice of the approved fine is provided to the parcel owner and, if applicable, to any occupant, licensee, or invitee of the parcel owner. The association must provide written notice of such fine or suspension by mail or hand delivery to the parcel owner and, if applicable, to any occupant, licensee, or invitee of the parcel owner.

4

26. Paragraph 12 of Defendant's Rules and Regulations: Architectural Review Board Design Guidelines (the "Guidelines") (EXTERIOR APPEARANCE, PAINT and ROOF COLORS) provides:

> Requests to change the color of the house, roof, trim, garage door or front door must be submitted to the ARB. The Oakbrooke Estates approved color palette is required for all future home painting requests. The ARB has expanded the original color palette from six patterns to 13 patterns. The approved color palettes are on file in the property management office and at the Sherwin Williams paint store in Palm City. **No exterior painting** is permitted without prior written approval from the ARB. (Homeowners are encouraged to purchase Sherwin Williams paint but are free to use paint from other suppliers provided the alternate supplier exactly matches the approved Sherwin Williams color.

A copy of the Guidelines are attached hereto at Exhibit "B."

27. Significantly, there is no verbiage in the Guidelines, which Defendant has ignored enforcing except with respect to Plaintiffs, precluding the usage of multiple paint colors from the "approved" palette.

28. Additionally, when other non-African Americans painted their homes colors that were not in the "approved" palette, the Association apparently amended its governing documents to "grandfather in" these colors, as opposed to fining them, as they have done with Plaintiffs.

29. Regardless, as set forth in greater detail below, Defendant has permitted non-African Americans, and non-biracial couples, to paint their homes, and roofs, colors that are not contained on the "approved" palette.

30. Between 2005, and 2006, Plaintiffs substantially improved the Property, installing a swimming pool, paver deck, putting green, paver sidewalk, custom landscaping, and custom glass inserts that were installed in the front door.

31. Plaintiffs did not obtain, and were not told, that any approval by Defendant, or the

ARB, was required in order to undertake the aforementioned improvements.

32. In or about 2006, or 2007, approximately twenty percent (20%) of the Property's front door was painted black.

33. Remarkably, on April 24, 2012, approximately six (6) years after the Property's front door was painted black, Plaintiffs received a notice of violation from Defendant for painting the door.

34. At or around this time, Plaintiffs were advised that they had to apply for a "color exception" for painting the door back, as after Plaintiffs painted the door, Defendant allegedly passed a rule banning black as a color.

35. Despite the fact that this was absurd, and in order to not rock the proverbial boat, Plaintiffs applied for the color exception, but of course were denied.

36. Starting in or about June, 2021, Plaintiffs advised the ARB that they intended to re-tint the Property's roof (the "Roof") to brown, because of lightening that resulted from being exposed to the elements.

37. After submitting all applications, and documents, required to the ARB, approximately one (1) month later, Plaintiffs' request was denied on the purported grounds that Defendant did not allow brown roofs in the Community.

38. However, at the time Plaintiffs made their request to re-tint the color of the Roof, and were denied, at least one (1) other roof in the Community, owned by a Caucasian couple. Was brown.

39. When Delgardo contacted this couple, they advised Delgardo that the ARB previously approved the brown roof color; *to wit*, Canyon Malibu brown.

40. Plaintiffs resubmitted a request to the ARB to have the Roof color re-tinted to

Canyon Malibu brown, informing the ARB that it previously approved the same exact color for the aforementioned roof.

41.     Confronted with this evidence of selective enforcement, the ARB reluctantly approved Plaintiffs' request to re-tint the Roof color.

42.     However, shockingly, after approving the color, and after Plaintiffs re-tinted the Roof color to the approved Canyon Malibu Brown, on or about October 11, 2021, Defendant's property manager, Karey Raubenheimer (the "Property Manager") sent Delgardo a letter entitled "Courtesy Notice", advising him that Plaintiffs purportedly violated the Guidelines because their Roof color (Canyan Malibu Brown), did not match the color that was approved.

43.     At or around the same time Plaintiffs submitted the aforementioned request to re-tint the Roof color, they also submitted a request to paint the house on the Property (the "House") a gray-white tone, which such colors were not included in the available palette of colors.

44.     The ARB summarily denied Plaintiffs' request, despite the fact that since at least 2011, it had approved requests of other Caucasian, single race married owners to paint their houses colors that were not within the "approved" palette.

45.     By way of example, the house across the street from the Defendant's Secretary's House, Michael O'Leary, which is owned by a Caucasian gentleman, is painted lime green.

46.     However, no action was ever taken by Defendant with respect to this house.

47.     In or about July 2021, Plaintiffs submitted a new request to the ARB, using a combination of two (2) approved colors – canvas tan, and pure white.

48.     The House was going to be painted canvas tan, with the trim pure white.

49.     However, the ARB denied this request under the auspices that two (2) colors were being combined, despite the fact that there is no rule in the Guidelines that states you cannot utilize

color combinations from the "approved" palette, and despite the fact that multiple Caucasian owners have houses with different trim, and base, colors.

50. After receiving the aforementioned denial, Delgardo wrote the ARB complaining about the denial, and the fact that there were multiple homes located in the Community that were not painted with colors from the "approved" palette.

51. Remarkably, O'Leary admitted that the aforementioned homes were "rogue" homes, and that Defendant did not enforce the color requirements with respect to their homes.

52. Once again, Defendant was selectively enforcing which rules it chose to based upon the race of the owner.

53. The statistics establish this nefarious conduct – of course none of the below homes are partially owned by an African-American, or a biracial couple:

- 51 of 71 homes in the Community do not match the "approved" palette

- 15 of 71 home trims are altered, or mixed from another palette

- 68 of 71 roofs do not match original colors, meaning that the new colors were approved by the ARB, which does not maintain guidelines with respect to approved roof colors

- 45 of 71 homes have unique front doors, styles, colors, materials

54. Despite this, Plaintiffs remain the only owners fined (albeit unlawfully) for allegedly not adhering to the Guidelines.

55. On January 24, 2022, Plaintiffs received a letter entitled "Notice of Imposed Fine," which advised Plaintiffs that the Board of Directors had imposed a fine against Plaintiffs in the amount of $1,000.00 for painting the home a color that was not approved by the ARB.

56. First, the fine itself is invalid, at it was not voted on by the Board at a duly noticed meeting, and then imposed by a grievance, or fining, committee, after a hearing on at least fourteen

(14) days' notice to Plaintiffs. A copy of the aforementioned notice is attached hereto at Exhibit "C."

57. Second, Defendant waived the right to enforce the provision related to home color requirements by refusing to enforce same on non-African American, non-biracially married owners.

58. On January 24, 2022, Plaintiffs received a letter entitled "Notice of Imposed Fine," which advised Plaintiff that the Board of Directors had imposed a fine against Plaintiffs in the amount of $1,000.00 for improper roof color. A copy of the aforementioned notice is attached hereto at Exhibit "D."

59. First, the fine itself is invalid, at it was not voted on by the Board at a duly noticed meeting, and then imposed by a grievance, or fining, committee, after a hearing on at least fourteen (14) days' notice to Plaintiffs.

60. Second, the ARB expressly approved the color that Plaintiffs' roof was re-tinted.

61. Finally, there are no "approved" roof colors set forth in the Guidelines.

62. As if the foregoing were not enough, in a vengeful, racist act, Defendant redirected the water flow emanating from Plaintiffs' neighbors' property to Plaintiffs' property without their knowledge, or consent.

63. Since on about 2004, the Property's backyard was flooding, causing damage to, among things, the pool, and perimeter wall.

64. The flooding worsened, and on about August 15, 2021, Plaintiffs requested that the Property Manager take remedial action with respect to the flooding in Plaintiffs' backyard that was causing damage to Plaintiffs' pool, and perimeter wall.

65. To date, Plaintiffs have not received a response to the aforementioned request, and

9

the flooding continues.

66. However, without Plaintiffs' knowledge, or consent, Defendant added drains in the Property's backyard, which drained other owners' water into Plaintiffs' backyard, causing even more damage.

67. Defendant's racist, surreptitious conduct knows no bounds.

68. All conditions precedent to the filing of this lawsuit have been performed, waived, or excused.

## COUNT I
### (Declaratory Judgment)

69. Plaintiffs repeat and reallege the allegations contained in Paragraphs 1- 68 as though fully set forth hereat.

70. There is a bona fide, actual, present, practical need with respect to the status of, and validity of (i) certain amounts related to purported fines imposed by Defendant, on Plaintiffs; and (ii) certain purported violations of the Guidelines by Plaintiffs.

71. There is a present, ascertained, or ascertainable state of facts or present controversy as to a state of fact.

72. An immunity, power, privilege, or right of Plaintiffs is dependent upon the facts or the law applicable to the facts,

73. There are persons who have, or may reasonably have, an actual, present, adverse, and antagonistic interest in the subject matter, either in fact, or law.

74. The antagonistic and adverse interest are all before the court by proper process and the relief sought is not merely the giving of legal advice by the court of the answer to questions propounded from curiosity.

WHEREFORE, Plaintiffs seek a declaratory judgment that they (i) do not owe Defendant

10

any amounts for purported violations of the Guidelines, or governing documents, allegedly imposed on them; and (ii) did not violate the Guidelines, or governing documents.

## COUNT II
### (Violation of 42 U.S.C. §3604)

75. Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 – 68 as though fully set forth hereat.

76. 42 U.S.C. §3604(b) prevents any person from discriminating against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.

77. Defendant violated the FHA by singling out Plaintiffs, one of which is the only African-American that owns property in the Community, and both of which constitute the only biracial married owners in the Community, by selectively enforcing rules and regulations against Plaintiffs that are openly flouted by owners who are not African-American, or biracial, and unlawfully seeking to fine Plaintiffs for same, in derogation of the FHA, and the Florida Statutes.

78. Defendant's conduct has created a hostile environment in an effort to discourage Plaintiffs to continue to live in the Community.

79. Defendant's conduct has a discriminatory effect on Plaintiffs due to their race.

WHEREFORE, Plaintiffs seek judgment against Defendant: (i) declaring that the actions of the Defendant violated the Fair Housing Act; (ii) enjoining Defendant from continuing to violate the Fair Housing Act, and retaliating, threatening, and intimidating, Plaintiffs; (iii) awarding Plaintiffs compensatory, and punitive damages; (iv) awarding Plaintiffs their attorneys' fees, and costs, incurred in connection with the institution, and prosecution, of this action; and (v) ordering any such other relief as the Court deems just

## COUNT III
### (Retaliation Under the Fair Housing Act)

80. Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 – 68 as though fully set forth hereat.

81. The Fair Housing Act, 42 U.S.C. § 3617, et seq., makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise of, or on account of, his or her having exercised, or on account of her or his having aided or encouraged any person in the exercise or enjoyment, any right granted or protected by" its provisions.

82. The retaliation provisions of the FHA have been broadly applied to all practices which have the effect of interfering with the exercise of rights under the federal fair housing laws.

83. As enumerated in detail above, Defendant has intimidated Plaintiffs with multiple despicable, acts, including selectively enforcing alleged Guidelines against Plaintiffs because of their race, while allowing other owners to flout such Guidelines, by unlawfully imposing fines against Plaintiffs for purported violations of the Guidelines, and by re-directing water flow into Plaintiffs' backyard.

84. Defendant has interfered with Plaintiffs' use and enjoyment of the Property.

85. As a result of the intimidation and fear of the rights to enjoy their Property, Plaintiffs live in fear, and have installed security cameras, and constantly look outside their windows, as agents of Defendant consistently stare and gawk at the Property.

WHEREFORE, Plaintiffs seek judgment against Defendants: (i) declaring that the actions of the Defendant violated the Fair Housing Act; (ii) enjoining Defendant from continuing to violate the Fair Housing Act, and retaliating, threatening, and intimidating Plaintiffs; (iii) awarding Plaintiffs compensatory, and punitive damages; (iv) awarding Plaintiffs their attorneys' fees, and

costs, incurred in connection with the institution, and prosecution, of this action; and (v) ordering any such other relief as the Court deems just, equitable, and proper.

## COUNT IV
### (Interference, Coercion, or Intimidation [Fla. Stat. §760.37]

86. Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 – 68 as though fully set forth here at.

87. Fla. Stat. § 760.37 closely mirrors the language of 42 U.S.C. § 3617, protecting the rights granted under ss. 760.20-760.37.

88. As enumerated in detail above, Defendant has intimidated Plaintiffs with multiple despicable, acts, including selectively enforcing alleged Guidelines against Plaintiffs because of their race, while allowing other owners to flout such Guidelines, by unlawfully imposing fines against Plaintiffs for purported violations of the Guidelines, and by re-directing water flow into Plaintiffs' backyard.

WHEREFORE, Plaintiffs seek judgment against Defendants, (i) declaring that the actions of the Defendant violated Fla. Stat §760.37; (ii) enjoining Defendant from continuing to violate the Fla. Stat §760.37, and retaliating, threatening, and intimidating, Plaintiffs; (iii) awarding Plaintiffs compensatory, and punitive damages; (iv) awarding Plaintiffs their attorneys' fees, and costs, incurred in connection with the institution, and prosecution, of this action; and (v) ordering any such other relief as the Court deems just, equitable, and proper.

## COUNT V
### (Violation of §720305(4) of the Florida Statutes)

89. Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 – 68 as though fully set forth here at.

90. Defendant has unreasonably infringed upon and impaired Plaintiffs' concerning the use of the Property.

91. Pursuant to section 720.3035(5) of the Florida Statutes:

> Neither the association nor any architectural, construction improvement, or other such similar committee of the association shall enforce any policy or restriction that is inconsistent with the rights and privileges of a parcel owner set forth in the declaration of covenants or other published guidelines and standards authorized by the declaration of covenants, whether uniformly applied or not. Neither the association nor any architectural, construction improvement, or other such similar committee of the association may rely upon a policy or restriction that is inconsistent with the declaration of covenants or other published guidelines and standards authorized by the declaration of covenants, whether uniformly applied or not, in defense of any action taken in the name of or on behalf of the association against a parcel owner.

92. As set forth herein, Defendant has enforced policies and restrictions on Plaintiffs that are inconsistent with Plaintiffs' rights and privileges as set forth in the Declaration.

WHEREFORE, Plaintiffs seek judgment against Defendant for damages, including attorneys' fees, and costs, incurred in connection with the institution, and prosecution, of this action; together with any such other relief as the Court deems just, equitable, and proper.

## COUNT VI
### (Violation of §720.305 of the Florida Statutes)

93. Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 – 68 as though fully set forth here at.

94. Section 720.305 of the Florida Statutes sets forth the requirements for imposing a fine on a member of the Association, such as Plaintiffs.

95. Defendant violated Section 720.305 of the Florida Statutes by imposing a fine on Plaintiffs without following the requisite statutory process, including not providing Plaintiffs with fourteen (14) days' notice and an opportunity to be heard.

WHEREFORE, Plaintiffs seek judgment against Defendant for damages, including attorneys' fees, and costs, incurred in connection with the institution, and prosecution, of this action; together with any such other relief as the Court deems just, equitable, and proper.

Dated: March 15, 2022

LUBLINER LAW PLLC
1645 Palm Beach Lakes Boulevard, Suite 1200
West Palm Beach, Florida 33401
Telephone: (561) 207-2018
Facsimile: (561) 584-7227
rich@lubliner-law.com
carolina@lubliner-law.com

BY:   */s/ Richard S. Lubliner*
RICHARD S. LUBLINER, ESQ.
FBN: 0047741